Mann *vs.* The Macon and Western Railroad Company.

---

Asa V. Mann, plaintiff in error, *vs.* The Macon and Western Railroad Company, defendant in error.

1. In an action against a railroad company for the recovery of damages for the death of a negro, occasioned by the cars of the company running over him on the track, it must affirmatively appear from the testimony, in order to charge the company with the loss, that the act was the result of neglect, mismanagement, or carelessness of the company or its employees. And in the absence of such proof, a non- suit is properly awarded by the Court below.
2. A direction from the owner to the employer of a slave to keep him at a particular place during the night, to be binding, must have been a part of the contract of hiring, and that it should be enforced by compulsory confinement, or that he was absent from the place indicated by the consent of the employer.

Case, in Monroe Superior Court. Tried before Judge Cabaniss, at the September Term, 1860.

This was an action on the case, brought by Asa V. Mann, against the Macon and Western Railroad Company, to recover damages for the loss of a negro man slave, by the name of Pompey, which the plaintiff alleges, was hired by him to the defendant, as an ordinary railroad hand; that the agents and employees of the defendant furnished the negro with spirituous liquors, so that he became intoxicated, and in this condition, strayed away from the place he was to be kept by the contract of hiring, and laid down on the railroad track of said company, and fell asleep, and that by the negligent and careless running of the train and engine of the company, the negro was run over and killed.

The declaration also contained a count in trover.

On the trial, the following state of facts was developed by the evidence, to-wit:

The negro, Pompey, was hired to defendant in the year 1851, and worked under James Nelms, as overseer, on a section of the road of the company extending from Forsyth to Smarr's station; the negro was fed by the plaintiff, and came to his master's every Saturday night, to get his food for the week. The plaintiff required that his negroes should stay with the overseer, and be under his control. The hands, (Pompey amongst the rest,) stayed in a shanty, about one quarter of a mile from the railroad, and about three miles from the town of Forsyth. The plaintiff lived in said town, and four or five hundred yards from the depot. Nelms, the overseer, gave verbal and written orders to Pitts & Smith, who kept a grocery near the depot, to let the negroes on the railroad have liquor when they wanted it. Pompey was frequently at said grocery of nights. It was a rule for the hands to stay with the overseer. On a moonlight night, about the middle of August, 1851, the negro was lying on or very near to the rail track of said company. The engine of the passenger train of the company ran over him and killed him, about one hundred and fifty yards below the depot in Forsyth. The train was running, at the time it killed the negro, in ordinary time and at usual speed. The train was stopped, and the body of the negro pulled

out from under the engine. It did not appear whether the whistle was blown or not. There was no headlight to the engine, as none were used at that time on the road. The negro was talkative and lively on the night he was killed, but it did not appear, from the testimony, whether he was drunk or not, or even whether he had drank any liquor that night. One of the witnesses who examined the track the next morning, gives it as his opinion, from the blood and hair on the cross-ties, that the negro must have been dragged fifty yards. One of the witnesses thought that the night the negro was killed was neither Saturday nor Sunday night.

Upon this evidence, the presiding Judge awarded a non-suit against the plaintiff, on the ground that the testimony did not sustain the plaintiff's cause of action, the action being not for negligently running the train so that the negro was killed, but for negligently permitting the negro to get drunk, stray off, and get killed, there being no evidence that the negro had drank any spirituous liquors on the night he was killed.

The writ of error in this case is prosecuted to reverse the judgment awarding the non-suit.

PINCKARD, for plaintiff in error.

PEEPLES & CABANISS, *contra.*

*By the Court*—LYON, J., delivering the opinion.

To have entitled the plaintiff to a recovery in this case, it was necessary to have shown that the death of the negro was caused by the neglect, mismanagement, or carelessness of the road, or its employees. Nothing of the kind appears from the evidence. The non-suit was therefore properly awarded.

It was urged, as a reason for the recovery, that Nelms, the overseer, having Pompey, the negro killed, in charge, gave a grocery keeper, at the Forsyth depot, verbal orders to let the negro have liquor. It is unnecessary to inquire whether the road would have been liable had the negro been furnished with liquor under such order, and his death caused in conse-

quence, as there is no evidence that the negro procured, or was under the influence of, liquor at the time.

2. The only other reason urged for the liability of the road was, that the negro was required to stay at the shanty with the overseer, and that if this requisition had been enforced, and the negro at the place where he ought to have been at the time, the accident would not have happened. It does not appear that this requirement was a part of the contract of hiring, or if so, that the road, or its employees, were to use compulsory force, such as confinement, to enforce it, nor that the departure or absence of the negro from his post was by the consent or knowledge of the defendant, which would be necessary to authorize a recovery on this ground.

Let the judgment be affirmed.